IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 1, 2012

## MARLOS SHIELDS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 05-08713      W. Otis Higgs, Jr., Judge**

---

**No. W2011-02442-CCA-R3-PC  - Filed February 8, 2013**

---

A Shelby County jury convicted petitioner, Marlos Shields, of aggravated robbery and aggravated burglary.  The trial court sentenced him to an effective eighteen-year sentence.  Following his direct appeal, petitioner filed a petition for post-conviction relief alleging that he received ineffective assistance of counsel.  The post-conviction court denied relief, and petitioner now appeals.  Following our review of the record, the parties' briefs, and applicable case law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Zipporah C. Williams, Memphis, Tennessee, for the appellant, Marlos Shields.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Katherine Berendt Ratton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Procedural History and Facts

A. Trial

A Shelby County grand jury indicted petitioner for aggravated robbery and aggravated burglary.  On direct appeal, this court summarized the facts developed at trial as follows:

Craig Love, the victim in this case, testified that he lived with his mother, who suffered from Alzheimers and poor health. On July 2, 2005, he was at his home interviewing a new nurse, Ms. Shirley Ann Rice, to help care for his mother. Around 9:30 a.m., [petitioner] knocked on the door looking for work. Mr. Love testified that he was acquainted with [petitioner] because [petitioner] had done some yard work for him in the past. Mr. Love recalled that he told [petitioner] that he did not have any work for him but to come back after the 4th of July holiday. In response, [petitioner] did not leave but insisted that Mr. Love provide him with some work. Mr. Love repeated that he did not have any work and proceeded to shut the door. Mr. Love said that as the door closed [petitioner] "broke in and hit me." [Petitioner] hit Mr. Love in the stomach and back. A scuffle ensued[,] and they both fell to the ground. [Petitioner] then picked up a brick and hit him in the head with it. During the attack, [petitioner] grabbed a rifle Mr. Love kept in the kitchen corner. When Mr. Love told [petitioner] the rifle was empty, [petitioner] grabbed a pair of needle-nose pliers and jabbed Mr. Love multiple times in the back. [Petitioner] then held the pliers against Mr. Love's neck and said, "[W]here's the money." Mr. Love told [petitioner] that he had some money in his pocket. Although Mr. Love could not specifically remember, he believed [petitioner] grabbed his wallet "out of my pocket as I turned over." Mr. Love recalled that he had his driver's license, some credit cards, two lottery tickets, a fake million dollar bill, and four to five hundred dollars in cash in his wallet the morning of the attack. Mr. Love noted that he often paid [petitioner] for yard work with cash from his wallet.

Mr. Love testified that [petitioner] left his house after the attack. Soon thereafter, the police arrived with Ms. Rice. Mr. Love told police what happened[,] and[] on July 4, 2005, he was asked to come to the police station. Mr. Love went to the police station where he gave a statement and reviewed a photographic lineup. Mr. Love identified [petitioner] from the photographic lineup as the man who attacked and robbed him. On cross-examination, Mr. Love acknowledged that he could not remember the details of the attack. He said, "I don't remember every exact move . . . but I remember the essence of what the heck happened." Mr. Love also acknowledged that the paramedics looked him over and told him that he "didn't need stitches in [his] head or anything." Mr. Love said that he did not go to the hospital because no one was available to take care of his mother while he was gone.

. . . .

Memphis Police Officer Lawrence Evans testified that he arrived at Mr. Love's residence within six minutes of receiving a robbery call. He took Mr. Love's statement. Mr. Love recounted that he had been attacked in his home by [petitioner], "who normally does yard work for him." Mr. Love explained the details of the attack and reported that his wallet was stolen. Officer Evans recalled that a few hundred dollars and credit cards were reported to be in Mr. Love's wallet. Officer Evans stated that, while investigating the case, he was able to ascertain the whereabouts of [petitioner] and relayed the information to other officers. Officer Evans recalled that [petitioner] matched the general physical description Mr. Love and Ms. Rice gave on July 2, 2005. Officer Evans acknowledged that no physical evidence was recovered from Mr. Love's house. Sergeant Dale Hensley of the Memphis Police Department testified that he called Mr. Love and asked him to come to the police station after [petitioner] had been placed in custody. Sergeant Hensley took pictures of some of Mr. Love's injuries, took Mr. Love's statement, and asked Mr. Love to look at a photographic lineup. Mr. Love positively identified [petitioner] from the photographic lineup as the man who attacked and robbed him. Thereafter, Sergeant Hensley spoke with [petitioner] after advising him of his *Miranda* rights. [Petitioner] initially said that he had never met Mr. Love, did not know him, and did not work for him. However, after Sergeant Hensley confronted [petitioner] with Mr. Love's positive identification, [petitioner] said he interviewed with Mr. Love once for a job but decided not to take it because Mr. Love had an attitude.

[Petitioner] testified on his own behalf. He testified that he knew Mr. Love because he had done yard work for him in 2005. He said he had done landscaping work for Mr. Love for about six months and worked five days a week at nine dollars per hour. However, [petitioner] asserted that he was not at Mr. Love's residence July 2nd, but rather, he was at the Dixie Homes projects around 9:30 that morning playing dominoes or cards with some friends. While [petitioner] could not recall his friends names, he claimed that he played dominoes or cards with his friends at the projects until 1:00 p.m. [Petitioner] stated that he was arrested as a suspect July 3rd by Officer Anderson. On cross-examination, [petitioner] said he did not change his story about knowing Mr. Love. [Petitioner] acknowledged that he did not give [Sergeant] Hensley the names of his friends he was with the morning of July 2nd.

Officer Chester Anderson was called by the state as a rebuttal witness. Officer Anderson testified that on July 3rd, he took [petitioner] into custody

and transported him to the police station. At that time, Officer Anderson asked [petitioner] where he was the day before. [Petitioner] responded that he was working. According to Officer Anderson, [petitioner] made no mention of playing dominoes or games.

*State v. Marlos Shields*, No. W2007-01721-CCA-R3-CD, 2009 WL 2047588, at *1-3 (Tenn. Crim. App. July 15, 2009). After hearing the evidence, the jury convicted appellant as charged. The trial court sentenced petitioner to twelve years for aggravated robbery and six years for aggravated burglary. *Id.* at *3. The court ordered that petitioner's sentences be served consecutively for a total effective sentence of eighteen years. *Id.* This court affirmed petitioner's convictions and sentences on direct appeal. *Id.* at *1.

While his direct appeal was pending in this court, petitioner filed a pro se petition for post-conviction relief. The post-conviction court denied the petition as untimely because petitioner's direct appeal was still pending. After the conclusion of his direct appeal, petitioner filed a second petition for post-conviction relief. The post-conviction court appointed counsel who filed an amended petition for post-conviction relief asserting that petitioner received ineffective assistance of counsel. The post-conviction court held a hearing on the petition on September 21, 2011, at which the parties presented the following evidence:

Petitioner testified that he filed a petition for post-conviction relief because trial counsel failed to properly investigate his case and failed to raise the issue of identification at trial. Petitioner stated that he knew the victim in this case and that he had landscaped the victim's yard "six months straight for about five days a week." He further stated that he saw the victim twice a day when he worked at his house. When asked why identification was an issue, petitioner answered, "Because [the victim] . . . never gave my description to the officer that had came [sic] to the crime scene nor did he mention my name in a . . . police report."

Petitioner testified that trial counsel gave him discovery and spoke with him about the identification issue. Petitioner believed that the victim did not give police petitioner's name or identify petitioner to the police because the police report only had "[l]ight skinneded [sic]" in the description. According to petitioner, the victim said petitioner was a "fair skinned[] person" and testified at the preliminary hearing that the perpetrator was "light skinned." Petitioner said he told trial counsel about the description listed on the police report and told him that the pictures on the photograph lineup were suggestive. He stated that he was under the impression that trial counsel would argue "misidentification" at trial.

Petitioner recalled that Sergeant Dale Hensley testified at trial about presenting a photograph lineup to the victim. Petitioner stated that Sergeant Hensley did not follow the

-4-

proper procedure when presenting the photograph lineup because "whatever description the victim give[s] to the officers[,] . . . then that's what they have to go by . . . when they show him the pictures." Petitioner said he was the "darkest" suspect on the photograph lineup. He also said he took issue with the fact that the lineup stated, "[T]his is the man that beat me and robbed me last Saturday," by his picture, but it was not written by the victim. Petitioner stated that he wanted trial counsel to file a motion to suppress the identification, but trial counsel did not file the motion.

On cross-examination, petitioner agreed that the victim saw petitioner at least twice a day, five days a week, for six months and would be able recognize him . Petitioner recalled reading an affidavit that stated the victim advised the police that the suspect was his "yardman." According to petitioner, trial counsel told him he would file a motion to suppress the identification. He denied that trial counsel told him identification was not an issue because the victim knew petitioner. Petitioner recalled that Sergeant Hensley testified at trial about the process of creating a photograph lineup, including the fact that a computer selected the five other photographs displayed with petitioner's photograph.

Trial counsel testified that he prepared for petitioner's case by conducting discovery, filing pretrial motions, and discussing the case with petitioner. Trial counsel stated that he also spoke with petitioner's friend, "Kevin," who "may or may not have had information relating to the case that would help [petitioner]." Trial counsel decided not to use Kevin as a witness because he would have been more damaging than helpful to petitioner's case.

Trial counsel stated that he advised petitioner not to go to trial because he did not believe petitioner would be able to win his case. He explained that the case was not "winnable" because petitioner did not have a strong alibi witness and the victim identified petitioner the day of the incident and in a photograph lineup two days later. However, trial counsel said petitioner wanted "his day in court."

Trial counsel testified that filing a motion to suppress the identification would have been frivolous because identification was not an issue. He said no basis existed upon which he could argue that the photograph lineup was suggestive. He further said that even if the court suppressed the photograph lineup identification, the victim would have still identified petitioner at trial. Trial counsel recalled that petitioner was adamant about trial counsel's filing a motion to suppress the identification, but trial counsel did not file the motion because, in his opinion, the issue had no merit. Trial counsel stated that at trial, he cross-examined the victim about his identification of petitioner.

After hearing the evidence, the post-conviction court took the matter under advisement. On October 28, 2001, the court filed a written order denying the petition for

-5-

post-conviction relief, concluding that trial counsel was not deficient and that trial counsel made a tactical decision not to pursue suppression of the photograph lineup. Petitioner appeals the post-conviction court's denial of relief.

## II. Analysis

### *Standard of Review*

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact carry the weight of a jury verdict and are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)), *perm. app. denied* (Tenn. Feb. 16, 2012). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is *de novo* with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citations omitted). It follows that if this court holds that

either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35. On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

On appeal, petitioner argues that the post-conviction court erred in denying his petition for post-conviction relief because trial counsel was ineffective for failing "to properly investigate the appellant's case[,] which resulted in a failure to raise misidentification as an issue before or during trial." He contends that if trial counsel had properly investigated the case, trial counsel would have known that petitioner did not fit the description that the victim gave to police and that Sergeant Hensley did not follow the correct procedure when presenting the photograph lineup.

In our view, petitioner failed to establish that trial counsel was deficient or that any alleged deficiencies prejudiced him. Trial counsel testified that he did not challenge the victim's identification of petitioner with a motion to suppress because he believed such a motion was frivolous based on the facts of this case. Petitioner worked as the victim's "yardman," and the victim saw petitioner at least twice a day, five days a week, for six months before the incident. The victim told police his "yardman" was the person who robbed him, and he identified petitioner using a photograph lineup. Trial counsel testified that he cross-examined the victim on this issue during trial. The post-conviction court accredited counsel's testimony and determined that trial counsel's decision to forgo filing a motion to suppress the identification was a reasonable tactical decision. Moreover, petitioner did not present any proof at the evidentiary hearing to support his assertions that Sergeant Hensley did not follow proper procedure when conducting the photograph lineup and that the photograph lineup was unduly suggestive. Petitioner has failed to meet his burden of showing that trial counsel was deficient and that trial counsel's alleged deficiencies prejudiced him, and he is not entitled to post-conviction relief.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE

-8-